# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN THOMAS ATTEBERY, individually and on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>US FOODS, INC. d/b/a US FOODSERVICE, INC., a Delaware corporation, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 1:22-cv-1352 JLT BAM<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND<br><br>(Doc. 7) |

Steven Thomas Attebery alleges that US Foods violated the Unfair Competition Law and several provisions of the California Labor Code, including provisions related to rest breaks, meal breaks, overtime pay, timely and accurate wages, and termination wages. (Doc. 1 at 20.) Plaintiff filed this action in Fresno County Superior Court on behalf of himself and similarly situated employees in California. Defendant removed the suit to this Court under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). (Doc. 1.) Plaintiff requests remand of this action, claiming the numerosity and amount in controversy requirements under CAFA are not satisfied. (Doc. 7.) Defendant maintains the Court has jurisdiction under CAFA. (Doc. 8.) For the reasons below, Plaintiff's motion to remand is **DENIED**.

1

## I.   INTRODUCTION

Plaintiff brought this class action against his former employer, US Foods, by filing a complaint in Fresno County Superior Court on September 16, 2022.  (Doc. 1 at 20.)  He seeks to state claims on behalf of a class defined as: "All employees who are or were employed by [US Foods] in the state of California as hourly non-exempt employees within four (4) years prior to the date this lawsuit is filed … until resolution of this lawsuit."  (*Id.* at 25, ¶ 22.)

Plaintiff was employed by US Foods as a "Truck Driver/Delivery Driver," which was classified as a non-exempt, hourly position.  (Doc. 1 at 23, ¶ 12.)  Plaintiff's duties included "delivering food and food products to different locations via truck."  (*Id.*)  He was employed by US Foods from about January 2014 through September 16, 2021.  (*Id.*)

Plaintiff contends that during the relevant liability period, US Foods "implemented policies and practices which resulted in Plaintiff and Non Exempt Employees not receiving minimum wage for all hours worked."  (Doc. 1 at 23, ¶ 13.)  Plaintiff alleges:

> [D]uring the COVID-19 pandemic beginning in March 2020, Plaintiff and Class Members were required to undergo COVID-19 screenings when beginning a shift at certain locations. Furthermore, Plaintiff was required to move trucks, hook up trailers, and move equipment prior to clocking in for his shift, working often up to thirty (30) minutes off the clock prior to the start of his shift. Plaintiff and Class Members were not compensated for this off-the- clock time spent working and under Defendant's control.

(*Id.*)  In addition, Plaintiff asserts he "was regularly required to use his personal cell phone for work-related purposes off the clock," including approximately 2.5 hours of uncompensated time spent on his cell phone with the transportation manager.  (*Id.*)

According to Plaintiff, "due to the work load requirements and time constraints imposed by Defendant during every shift," he and Class Members were required to work more than five hours without a minimum, uninterrupted 30-minute meal period, and "in excess of ten… hours without a second minimum, uninterrupted thirty (30) minute meal period."  (Doc. 1 at 23-24, ¶¶ 14-15.)  He contends he and other non-exempt employees of US Foods "rarely, if ever, received an uninterrupted … meal break when required."  (*Id.* at 24, ¶ 14.)  Plaintiff asserts they "were required to work shifts up to thirty... hours and were not provided a second meal break due to the demands of the job."  (*Id.*)  Plaintiff alleges he and the class members were "not compensated one

1  … hour of pay at their regular rate of compensation for each workday that a compliant meal
2  period was not provided, in violation of California labor laws, regulations and IWC Wage Order."
3  (*Id.*, ¶ 14.)

4   In addition, Plaintiff alleges that "[he] and Class Members were frequently required to
5  work without being permitted or authorized a minimum ten ... minute rest period for every four
6  hours or major fraction thereof," which he also attributes "to the workload requirements and time
7  constraints imposed by Defendant." (Doc. 1 at 24, ¶ 16.) Plaintiff asserts that he "rarely, if ever,
8  received any rest breaks due to the job demands and a shortage of staff." (*Id.*) Rather, Plaintiff
9  alleges he "was required to drive and timely make deliveries which made taking a ten-minute
10 break during his shift extremely difficult." (*Id.*) He contends that Defendant did not pay
11 compensation to class members "for each workday that a rest period was not provided." (*Id.*)

12  Plaintiff asserts US Foods also "failed to lawfully reimburse Plaintiff and Non-Exempt
13 employees for all business expenses necessarily incurred by Plaintiff and Non- Exempt
14 Employees." (Doc. 1 at 24, ¶ 17.) Plaintiff alleges that he "was required to regularly and
15 frequently use his cell phone for work-related purposes in order to communicate with colleagues,
16 managers, and customers," which was not compensated. (*Id.* at 24-25, ¶ 17.) He contends these
17 expenses were not compensated. (*Id.* at 25, ¶ 17.)

18  According to Plaintiff, US Foods "failed to maintain accurate itemized records reflecting
19 total hours worked and have failed to provide Non Exempt Employees with accurate, itemized
20 wage statements reflecting total hours worked and appropriate rates of pay for those hours
21 worked." (Doc. 1 at 25, ¶ 18.) He asserts IWC Wages Orders require maintaining records
22 showing "when the employee begins and ends each work period, meal periods, split shift intervals
23 and total daily hours worked in an itemized wage statement, and must show all deductions and
24 reimbursements from payment of wages, and accurately report total hours worked by Plaintiff and
25 the members of the proposed class." (*Id.* at 33-34, ¶ 64.) Plaintiff contends mandated records
26 were not kept, and consequently he and class members were "unaware of the full compensation to
27 which they were entitled." (*Id.* at 34, ¶¶ 64-65.)

28  Plaintiff alleges that on the day of his termination, he "did not receive his final paycheck

3

and was not compensated for waiting to receive his final paycheck." (Doc. 1 at 25, ¶ 20.). He contends "[m]ore than 30 days have passed since Plaintiff and affected Members have left Defendants' employ, and on information and belief, have not received payment pursuant to Labor Code § 203." (*Id.* at 33, ¶ 61.) He contends the conduct was willful, and "certain Class Members are entitled to 30 days' wages as a penalty…." (*Id.*)

Plaintiff seeks to hold Defendant liable for policies and practices that failed to:

- Pay lawful wages including overtime in violation of Cal. Lab. Code §§ 510, 1194, and 1198;
- Provide lawful meal periods (or compensation in lieu of) in violation of Lab. Code §§ 226.7, 512 and Industrial Wage Commission Wage Orders;
- Provide rest periods (or compensation in lieu thereof) in violation of Lab. Code § 226.7 and IWC Wage Orders;
- Reimburse class members' employee expenses in violation of Lab. Code § 2802;
- Pay timely wages in violation of Lab. Code § 204;
- Pay termination wages in violation of Lab. Code §§ 201–203;
- Comply with itemized employee wage statement provisions in violation of Lab. Code § 226(a)[1] and IWC Wage Orders; and
- Comply with Unfair Competition Law in violation of Cal. Bus. & Prof. Code §§ 17200–17208.

(Doc. 1 at 29-35.) Plaintiff's complaint also includes a claim for unlawful and unfair business practices in violation of California's Business and Professions Code §§ 17200. (*Id.* at 34.) In the prayer for relief, Plaintiff seeks compensatory, economic, and special damages; premium wages' premium pay and penalties; reasonable attorneys' fees; and costs. (*Id.* at 35.) The amount in controversy is not specified in the Complaint, though Plaintiff indicated on the Civil Case Cover Sheet the amount demanded exceeded $25,000. (Do. 1 at 18; *see also id.* at 20-35.)

---

[1] In the heading of the Seventh Cause of Action, Plaintiff indicates the claim is brought pursuant to Section 226(b). (Doc. 1 at 35.) However, the *allegations* of the complaint focus upon Section 226(a). (*See id.*) Section 226(a) governs itemized wage statements while Section 226(b) relates to an employer's obligation to "afford current and former employees the right to inspect or receive a copy of records pertaining to their employment, upon reasonable request to the employer." *See* Cal. Lab. Code § 226(a), (b). Thus, despite the heading, it appears Plaintiff seeks to state a claim for violation of Section 226(a).

4

Defendant removed the action to this Court pursuant to the Class Action Fairness Act. (Doc. 1.) Defendant asserts the parties are diverse, as Plaintiff is a resident of California and US Foods is deemed a citizen of Delaware and Illinois. (*Id.* at 6-7, ¶¶ 12-15.) Defendant reported the company's records identify at least 3,442 putative class members, who worked approximately 341,915 workweeks from September 15, 2018 to October 2022. (*Id.* at 7, 10, ¶¶ 19, 25.) Defendant contends the average hourly rate of pay for putative class members was approximately $26.87. (*Id.* at 9-10, ¶ 25.) Using this information, Defendant asserts the amount in controversy in this action exceeds $23,925,887.82. (*See id.* at 14, ¶ 36; *see also id.* at 10-14.) Therefore, Defendant contends the amount in controversy is satisfied without including potential attorneys' fees, which "would increase the amount in controversy by an additional $5,981,471.96." (*Id.* at 14, ¶ 37, emphasis omitted.)

Plaintiff contests the calculations in the Notice of Removal, and in the motion to remand asserts that federal jurisdiction is not warranted because the amount is controversy does not meet the jurisdictional threshold. (Doc. 7-1 at 2.) US Foods opposes remand and provides a declaration by its Area Human Resources Business Partner, Ronald Tolbert, as evidentiary support of the information contained in the Notice. (Doc. 8.) Plaintiff did not file a reply.

## II.   LEGAL STANDARD

Under CAFA, federal courts have original jurisdiction "over certain class actions, defined in 28 U.S.C. § 1332(d)(1), the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013)). "Congress enacted CAFA to 'curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate multi-state or even national class actions in state courts.'" *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1067 (9th Cir. 2019) (quoting *United Steel v. Shell Oil Co.*, 602 F.3d 1087, 1090 (9th Cir. 2010)). The Supreme Court held there is "no presumption against removal jurisdiction [under CAFA] and that CAFA should be read 'with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Allen v. Boeing Co.*, 784 F.3d 625, 633

(9th Cir. 2015) (alteration in original) (quoting *Dart Cherokee*, 574 U.S. at 89).[2]

"The burden of establishing removal jurisdiction, even in CAFA cases, lies with the defendant seeking removal." *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) (citation omitted).  A defendant seeking removal must file "a notice of removal 'containing a short and plain statement of the grounds for removal . . . '" *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting 28 U.S.C. § 1446(a)).  "'[When] a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court.'  '[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,'" and "need not contain evidentiary submissions."' *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924–25 (9th Cir. 2019) (quoting *Dart Cherokee*, 574 U.S. at 87–89; *Ibarra*, 775 F.3d at 1197); *see also* 28 U.S.C. § 1446(c)(2) (with certain exceptions, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy"). When a removing defendant shows recovery that could exceed $5 million, "and the plaintiff has neither acknowledged nor sought to establish that the class recovery is potentially any less, the defendant has borne its burden to show the amount in controversy exceeds $5 million." *Arias*, 936 F.3d at 927 (internal quotation marks and citation omitted).

"Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee*, 574 U.S. at 89.  If evidence is required, "[b]oth parties may submit evidence supporting the amount in controversy before the district court rules." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). Nonetheless, the removing party bears the ultimate burden of showing "by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Ibarra*, 775 F.3d at 1197.  This burden may be satisfied by submitting "affidavits or declarations, or other 'summary judgment-type evidence relevant to the amount in controversy at the time of removal,'" or by relying on reasonable assumptions. *Id.*; *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015); *see also Arias*, 936 F.3d at 925 ("[a]n assumption may

---

[2] Thus, contrary to Plaintiff's assertion, is no presumption in favor of remand for CAFA claims.

6

1  be reasonable if it is founded on the allegations of the complaint."). Removal is proper "if the

2  district court finds, by a preponderance of the evidence, that the amount in controversy exceeds

3  the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 88 (citations omitted).

4        The amount in controversy is *not* the amount of damages that the plaintiff will likely

5  recover, *see Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018), nor is it "a

6  prospective assessment of defendant's liability," *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395,

7  401 (9th Cir. 2010). Rather, it "is simply an estimate of the total amount in dispute." *Id.* Thus,

8  the amount on controversy merely "reflects the maximum recovery the plaintiff could reasonably

9  recover." *Arias*, 936 F.3d at 927. To determine the amount in controversy for CAFA purposes,

10  the claims of individual members in a putative class are aggregated. 28 U.S.C. § 1332(d)(6); *see*

11  *also Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013).

### III. DISCUSSION

13  Plaintiff contests the information provided in the Notice of Removal (NOR), including

14  those related to the number of class members and the amount in controversy. (*See generally* Doc.

15  7-1 at 5-9.) Thus, Plaintiff asserts the matter should be remanded to the state court.

16  **A.    Diversity of Parties**

17  As an initial matter, Plaintiff does not contest the diversity of the parties. (*See generally*

18  Doc. 7-1.) Because Plaintiff is a resident of California and US Foods is a citizen of Delaware and

19  Illinois, the Court finds the parties are diverse and this element of CAFA is satisfied.

20  **B.    Size of Class**

21  Plaintiff contests Defendant's assertion that the class has more than 100 members, but

22  Plaintiff has already admitted as much in the Complaint: "Plaintiff is informed and believes that

23  Defendants currently employ . . . approximately over 100 Non-Exempt Employees in California."

24  (Doc. 1 at 25, 27.) Moreover, Defendant supports the assertion that there are 3,442 putative class

25  members with a declaration from the Area Human Resources Business Partner, Ronald Tolbert,

26  who reports that he "reviewed information pulled from US Foods' electronic databases

27  concerning the number of individuals who are or were employed by US Foods in an hourly, non-

28  exempt position in California from September 16, 2018 to October 20, 2022," identifying 3,442

individuals. (Doc. 8-2 at 2, Tolbert Decl. ¶ 8.) Consequently, the number of class members exceeds the minimum required by CAFA.

**C.     Amount in Controversy**

       1.    Overtime and Minimum Wage Claims

Plaintiff alleges that "policies and/or practices" of Defendant "resulted in Plaintiff and Non-Exempt Employees not receiving minimum wages for time spent working off the clock while subject to the control of Defendant all without pay." (Doc. 1 at 9, ¶ 33.) In addition, Plaintiff alleges the Defendant's policies and practices resulted in the class "not receiving all lawful wages at the regular rate of pay when working overtime and double-time hours under Defendant's control." (*Id.*, ¶ 35.) California Labor Code section 510 requires employers to pay employees who work more than eight hours in a day or forty hours in a week at a rate of no less than one and a half times the regular rate of pay for an employee. *See* Cal. Lab. Code § 510(a). It also ensures a compensation rate of no less than twice the regular rate of pay when an employee works more than twelve hours in a day or more than eight hours on the seventh consecutive day of work. *Id.*

In the Notice of Removal, Defendant noted Plaintiff alleged he and other class members were required to undergo COVID-19 screenings when beginning a shift at certain locations. (Doc. 1 at 10.) Defendant also noted Plaintiff asserted he was required to move trucks, hook up trailers, and move equipment prior to beginning his shift, often working up to thirty minutes off the clock. (*Id.*) Plaintiff indicated he "was regularly required to use his personal cell phone for work-related purposes off the clock, spending approximately 2.5 hours on the phone with the transportation manager." (*Id.*) Because Plaintiff alleged "uniform policies and practices of not paying Plaintiff and putative class members," Defendant calculated the amount in controversy at a rate of "one hour of unpaid overtime every two weeks." (*Id.* at 10-11.)

In the motion for remand, Plaintiff challenges Defendant's calculation, especially as it relates to COVID-19 screenings prior to March 2020, but provides no alternative method of valuation in either the Complaint or motion. (Doc. 7-1 at 5–6.) With the opposition brief, Defendants subjected the declaration of Mr. Tolbert, a company representative with personal

knowledge of the number of individuals covered by the class (3,442); the average hourly rate of the individuals ($26.87); and the total number of workweeks worked by the putative class (341,915). (Doc. 8-2 at 2-3, ¶¶ 6-8.) Defendant claims its calculation is reasonable: after assuming one hour of unpaid time for every two workweeks for each class member—a ten percent violation rate—Defendant aggregates this amount to cover the entire class, totaling $6,890,442.04. (Doc. 8 at 6–7.) Defendant's calculation is reflected here:

> [(1 hour of overtime/2 workweeks) x (341,915 workweeks) x (1.5 x $26.87 hourly rate)] = $6,890,442.04.

(Doc. 8 at 7.)

The Court finds this calculation given Plaintiff's allegations that Defendant's "patterns and practices" required off-the-clock work. Though time spent conducting COVID-19 screenings prior to March 2020 should not be part of the calculation, Plaintiff's allegations of class members having to "regularly" and "often" conduct other off-the-clock work—such as taking phone calls and moving equipment—weighs in favor of finding Defendant's calculation using a 10% violation rate for the entirety of the relevant period was reasonable.

This Court previously found that when a plaintiff alleged a general pattern or practice of unpaid overtime, the presumption of a one-hour per week of missed overtime pay, the equivalent of a 20% violation rate, was reasonable. *Kincaid v. Educ. Credit Mgmt. Corp.*, 2022 WL 597158, *4 (E.D. Cal. Feb. 28, 2022); *Wicker v. ASC Profiles LLC*, 2021 WL 1187271, *2-3 (E.D. Cal. Mar. 30, 2021) (finding one overtime violation per week reasonable as a 20% violation rate based the plaintiff "alleging 'a pattern and practice' of 'Defendants fail[ing] to pay overtime wages to Plaintiff and other class member for all hours worked'") (alteration in original). The Court finds the assumed 10% violation rate in this action was reasonable, accounting both for the fact that there was a policy change in 2020 related to COVID-19, and the possibility that not every class member worked overtime. *See id.*; *Hender v. Am. Directions Workforce LLC,* 2020 WL 5959908, at *8 (E.D. Cal. Oct. 8, 2020) (finding defendants' calculation based on a 20% violation rate was "a conservative estimate allowing for the possibility that not every putative class

member worked overtime"); *see also Sanchez v. The Ritz Carlton*, 2015 WL 4919972, at *4 (C.D. Cal. Aug. 17, 2015) (finding assumptions reasonable where "Defendants offered conservative, plausible violation rates not inconsistent with the allegations in the Complaint."). Thus, the Court concludes that, by a preponderance of the evidence, Defendant has established that $6,890,442.04 is in controversy for Plaintiff's overtime and minimum wage claims.

        2.  <u>Meal and Rest Break Claims</u>

Plaintiff next challenges Defendant's inclusion of all potential pay periods in arriving at its meal and rest break calculation and highlights the fact that Defendant did not review employee time records. (Doc. 7-1 at 7.) Plaintiff also challenges Defendant's failure to account for efforts that might reduce its legal exposure. (*Id.*)

Under California Labor Code §§ 226.7 and 516, employers must provide non-exempt employees working more than five hours in a shift with at least one uninterrupted meal break of at least 30 minutes. If an employee's total work period in a day does not exceed six hours, the meal period may be waived by mutual consent of the employer and employee. Employees working more than ten hours per day must be given a second thirty-minute meal period, unless they are working fewer than twelve hours, in which case the second meal period can likewise be waived. Employees are entitled to one additional hour at their regular pay rate for each workday in which a compliant meal period was not provided. Cal. Lab. Code § 226.7(b). In addition, employers must provide non-exempt employees with at least one ten-minute rest period for every four hours worked. Failure to provide the rest periods results in a penalty of "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Cal. Labor Code § 226.7(c).

Plaintiff alleges he and other class members "rarely, if ever, received an uninterrupted 30-minute meal break when required" and "were required to work shifts up to thirteen (13) hours and were not provided a second meal period due to job demands." (Doc. 1 at 24, ¶¶ 14-15.) As to rest breaks, Plaintiff and class members were "frequently required to work without being permitted or authorized a minimum 10-minute rest period for every four hours," and "rarely, if ever, received any rest breaks due to the job demands and a shortage of staff." (*Id.*, ¶ 16) In the

Notice of Removal, Defendant again used a 10% violation rate for the meal and rest break claims and provides the following calculation:

> [(1 meal violation/2 workweeks) x (341,915 workweeks) x ($26.87 hourly rate for meal period premiums)] + [(1 rest break violation/2 workweeks] x [341,915 workweeks) x ($26.87 hourly rate for rest period premiums)] = $9,187,256.18.

(Doc. 1 at 12–13; Doc. 8 at 9)

Courts in the Ninth Circuit found that where, as here, a plaintiff alleges a defendant's "pattern and practice" caused the identified violations, assumed violation rates between 20% to 60% are reasonable to calculate the amount in controversy. *See, e.g., Avila v. Rue21, Inc.,* 432 F. Supp. 3d 1175, 1189 (E.D. Cal. 2020) ("violation rates of 25% to 60% can be reasonably assumed as a matter of law based on 'pattern and practice' or 'policy and practice' allegation." [collecting cases]); *see also Sanchez*, 2015 WL 4919972, at *4 (comparing and collecting cases). Despite Plaintiff's allegations of "rarely" being offered rest and meal breaks, Defendant provided a low estimate of a 10% violation rate, which results in damages exceeding $9,187,256.00.[3]

Although Plaintiff also challenges Defendant's lack of information regarding efforts to reduce its exposure (Doc. 7–1 at 8), Defendant is not obligated to address such efforts in seeking removal. Rather, the amount in controversy turns on what Plaintiff has put into controversy through the Complaint. *See Lewis*, 627 F.3d at 401; *see also Geographic Expeditions, Inc. v. Est. of Lhotka ex. rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010) ("just because a defendant might have a valid defense that will reduce recovery to below the jurisdictional amount does not mean the defendant will ultimately prevail on that defense"); *Jackson v. Compass Grp. USA, Inc.,* 2019 WL 3493991, at *4 (C.D. Cal. July 31, 2019) ("mitigation of damages is an affirmative defense, and a potential defense does not reduce the amount in controversy for purposes of establishing federal jurisdiction"). Thus, even if Defendant had addressed actions taken to reduce its exposure, the Court could not consider such information. *See Greene v. Harley-Davidson*, 965

---

[3] Applying the formula identified, the Court reached a calculation of $9,197,256.05—a difference of only pennies, likely caused by a difference in rounding.

F.3d 767, 774 (9th Cir. 2020) (finding a district court erred in considering "the merits of [Defendant's] affirmative defense to determine the amount in controversy"). By a preponderance of the evidence, the Court finds Defendant has shown this amount in controversy for Plaintiffs' meal and rest break violations exceeds $9,187,256.00.

### 3. Waiting Time Penalties

Plaintiff next challenges Defendant's analysis of claims five and six regarding Defendant's alleged failure to timely pay wages during employment and at termination, in violation of California Labor Code §§ 201, 202, and 204. In the NOR, Defendant proposes a 100% violation rate on account of "Plaintiff's allegations . . . about the uniform policies and practices of Defendants' alleged failure to pay . . . class members [timely] wages" as well as Plaintiff's request for the full statutory penalty under Labor Code §§ 203 and 210(a). Defendant further assumes that each employee leaving employment would have at least one incident of underpayment given Plaintiff's broad allegations of improper pattern and practice. (Doc. 1 at 12–13, 32, 33.) During the relevant period, Defendant identified 1,217 US Foods employees who ended their employment with the company. (*Id.* at 12.) Accordingly, Defendant has calculated the waiting time penalties as to the terminated class members as follows:

> (1,217 former employees x [8 hours x $26.87 final hourly rate of pay] x 30 days = $7,848,189.60)

(Doc. 1 at 13.)

Courts have found that a 100% violation rate is *not* reasonable for waiting time penalties where a plaintiff explicitly states in the complaint that not all affected class members experienced the alleged harm. *Bandril v. Plastikon Industries Inc.*, 2020 WL 13888355, at *4 (N.D. Cal. Jan. 6, 2020) ("[Defendants] 'failed to pay Plaintiff and other class members (but not all) who are no longer employed by Defendants their wages.'"). In contrast to the allegations in *Bandril*, Plaintiff requests penalties for "affected" and "certain" class members"—without explaining further— who have terminated their employment: "[A]ffected class members are entitled to compensation for all forms of wages earned, including, overtime compensation, minimum wage, correct sick

12

pay wages and compensation for non-provided rest and meal periods but to date have not received such compensation therefore entitling them [to] Labor Code section 203 penalties." (Doc. 1 at 14) Plaintiff also alleges that because "[m]ore than 30 days have passed since Plaintiff and affected Class Members have left Defendants' [*sic*] employ . . . [a]s a consequence of Defendant's willful conduct in not paying all earned wages, certain Class Members are entitled to 30 days' wages as a penalty under Labor Code § 203 for failure to pay legal wages." (*Id*.) The Complaint does not explicitly state whether the affected class members awaiting wages include all of the former employees who have been terminated or only some of them.

Despite these ambiguous allegations, in looking at the Complaint as a whole, the Court concludes Defendant's assumption of a 100% violation rate as to all former employees is reasonable. Given Plaintiff's allegation that based on Defendant's policy and practice, class members were "rarely, if ever" given a meal or rest break (Doc. 1 at 24), it is a reasonable inference that all—or nearly all—class members experienced at least one Labor Code violation prior to termination. *See Serrieh v. Jill Acquisition, LLC*, -- F. Supp. 3d --, 2023 WL 8796717, at *5 (E.D. Cal. Dec. 20, 2023) ("The defendant "need only have caused and failed to remedy a single violation per employee for waiting time penalties to apply.") (citation omitted). Moreover, "[g]iven [D]efendant's reasonable assumption regarding the previously discussed violations, it is also 'reasonable to assume that all or nearly all employees in the class would be entitled to recovery of waiting time penalties.'" *Id.* (collecting cases). Accordingly, the Court finds Defendant's calculation is supported by a preponderance of the evidence.

4. <u>Attorneys' Fees</u>

Plaintiff's final challenge involves Defendant's calculation of future attorneys' fees, arguing they should not be allocated solely to the named plaintiff and the amount of 25% is improper. (Doc. 7-1 at 9-10.)

It is well-established that defendants may include a reasonable estimate of attorneys' fees for purposes of estimating the amount in controversy when—as here—a plaintiff's claims arise under a fee-shifting statute. *Arias*, 936 F.3d at 927 (noting that California wage and hour laws include provisions for a prevailing plaintiff to receive attorneys' fees), citing *Fritsch v. Swift*

*Transp. Co. of Ariz.*, 899 F.3d 785, 794 (9th Cir. 2018).  Regardless, because the Court finds Defendant established the amount in controversy exceeds $5,000,000 without including attorneys' fees, the Court need not address the remaining arguments related to the estimated fees.

### CONCLUSION

For the reasons set forth above, the Court finds Defendant carries the burden to show by a preponderance of the evidence that the amount in controversy is satisfied, and the Court has jurisdiction over the matter pursuant to the Class Action Fairness Act. Thus, the Court **ORDERS**: Plaintiff's motion to remand the case to Fresno County Superior Court (Doc. 7) is **DENIED**.

IT IS SO ORDERED.

Dated:   **February 28, 2024**                                    /s/ Jennifer L. Thurston
                                                                              UNITED STATES DISTRICT JUDGE