UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN THOMAS ATTEBERY, individually and on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>US FOODS, INC. d/b/a/ US FOODSERVICE, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 1:22-CV-1352 JLT BAM<br><br>ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS AND DIRECTING THE PARTIES TO FILE A JOINT STATEMENT REGARDING THE STATE COURT PROCEEDINGS<br><br>(Doc. 5) |

Steven Thomas Attebery asserts US Foods violated California's wage and hour laws and Unfair Competition Law, and states claims against the company on behalf of himself and a class of similarly situated employees. (*See generally* Doc. 1, Exh. A.) Defendant moves to dismiss and/or stay the action, arguing: (1) Plaintiff's fifth claim for timely paid wages pursuant to California Labor Code section 204 fails to state a claim under Federal Rule of Civil Procedure 12(b)(6); (2) a stay is warranted under the doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976); and (3) alternatively, under *Landis*, this Court should refrain from hearing the case. Plaintiff did not oppose the motion.[1] For the

---

[1] In lieu of an opposition to the motion to dismiss, Plaintiff filed a motion to remand (Doc. 7), in violation of Eastern District Local Rule 230(e). The Court denied the motion. (Doc. 17.)

1

following reasons, the Court grants the motion in part and declines to reach the remainder of the motion. Instead, the Court directs the parties to file a joint status report as discussed below.

## I. BACKGROUND

**A.     This Action: *Attebery v. US Foods, Inc.***

Plaintiff brought this class action against his former employer, US Foods, by filing a complaint in Fresno Superior Court on September 16, 2022. (Doc. 1 at 20.) He seeks to state claims on behalf of a class defined as: "All employees who are or were employed by [US Foods] in the state of California as hourly non-exempt employees within four (4) years prior to the date this lawsuit is filed . . . until resolution of this lawsuit." (*Id.* at 25, ¶ 22.)

Plaintiff was employed by US Foods as a "Truck Driver/Delivery Driver," which was classified as a non-exempt, hourly position. (Doc. 1 at 23, ¶ 12.) Plaintiff's duties included "delivering food and food products to different locations via truck." (*Id.*) He was employed by US Foods from about January 2014 through September 16, 2021. (*Id.*)

Plaintiff contends that during the relevant liability period, US Foods "implemented policies and practices which resulted in Plaintiff and Non Exempt Employees not receiving minimum wage for all hours worked." (Doc. 1 at 23, ¶ 13.) Plaintiff alleges:

> [D]uring the COVID-19 pandemic beginning in March 2020, Plaintiff and Class Members were required to undergo COVID-19 screenings when beginning a shift at certain locations. Furthermore, Plaintiff was required to move trucks, hook up trailers, and move equipment prior to clocking in for his shift, working often up to thirty (30) minutes off the clock prior to the start of his shift. Plaintiff and Class Members were not compensated for this off-the-clock time spent working and under Defendant's control.

(*Id.*) In addition, Plaintiff asserts he "was regularly required to use his personal cell phone for work-related purposes off the clock," including approximately 2.5 hours of uncompensated time spent on his cell phone with the transportation manager. (*Id.*)

According to Plaintiff, "due to the work load requirements and time constraints imposed by Defendant during every shift," he and class members were required to work more than five hours without a minimum, uninterrupted thirty (30) minute meal period." (Doc. 1 at 23–24, ¶¶ 14–15.) He contends that he and other non-exempt employees "rarely, if ever, received an

2

1  uninterrupted . . . meal break when required." (*Id.* at 24, ¶ 14.) He asserts they worked shifts up
2  to 13 hours "and were not provided a second meal break due to the demands of the job." (*Id.*,
3  ¶ 15.) Plaintiff alleges he and the class members were not compensated an "hour of pay at their
4  regular rate of compensation for each workday that a compliant meal period was not provided, in
5  violation of California labor laws, regulations and IWC Wage Order." (*Id.*, ¶¶ 14, 15.)

6  In addition, Plaintiff alleges that "[he] and Class Members were frequently required to
7  work without being permitted or authorized a minimum ten . . . minute rest period for every four
8  hours or major fraction thereof," which he also attributes "to the workload requirements and time
9  constraints imposed by Defendant." (Doc. 1 at 24, ¶ 16.) Plaintiff asserts he "rarely, if ever,
10 received any rest breaks due to the job demands and shortage of staff." (*Id.*) Rather, Plaintiff
11 alleges that he "was required to drive and timely make deliveries which made taking a ten-minute
12 break during his shift extremely difficult." (*Id.*) He contends Defendant did not pay
13 compensation to class members "for each workday that a rest period was not provided . . ." (*Id.*)

14 Plaintiff asserts US Foods also "failed to lawfully reimburse Plaintiff and Non-Exempt
15 employees for all business expenses necessarily incurred by Plaintiff and Non-Exempt
16 Employees." (Doc. 1 at 24, ¶ 17.) Plaintiff alleges he "was required to regularly and frequently
17 use[d] his cell phone for work-related purposes in order to communicate with colleagues,
18 managers, and customers," without compensation. (*Id.* at 24–25, ¶ 17.)

19 According to Plaintiff, US Foods "failed to maintain accurate itemized records reflecting
20 total hours worked and have failed to provide Non Exempt Employees with accurate, itemized
21 wage statements reflecting total hours worked and appropriate rates of pay for those hours
22 worked." (Doc. 1 at 25, ¶ 18.) He asserts IWC Wage Orders require maintaining records
23 showing "when the employee begins and ends each work period, meal periods, split shift intervals
24 and total daily hours worked in an itemized wage statement, and must show all deductions and
25 reimbursements from payment of wages, and accurately report total hours worked by Plaintiff and
26 the members of the proposed class." (*Id.* at 33–34, ¶ 64.) Plaintiff contends Defendant did not
27 keep the mandated records, and consequently he and class members were "unaware of the full
28 compensation to which they were entitled." (*Id.* at 34, ¶¶ 64–65.)

Further, Plaintiff contends Defendant failed to pay "wages when they were due and payable," because he and the class members were "not paid all lawful wages owed or provide with lawful meal period[s] or rest period[s] . . ." (Doc. 1 at 32, ¶ 52.) Plaintiff also alleges that the day of his termination, he "did not receive his final paycheck and was not compensated for waiting to receive his final paycheck." (*Id.* at 25, ¶ 19.) He contends "[m]ore than 30 days have passed since Plaintiff and affected Members have left Defendants' employ," and they did not receive "payment pursuant to Labor Code § 203." (*Id.* at 33, ¶ 61.)

Plaintiff seeks to hold Defendant liable failure to:

- Pay lawful wages including overtime in violation of Cal. Lab. Code §§ 510, 1194, and 1197[2];

- Provide lawful meal periods (or compensation in lieu of) in violation of Lab. Code §§ 226.7, 512 and Industrial Wage Commission Wage Orders;

- Provide rest periods (or compensation in lieu thereof) in violation of Lab. Code § 226.7 and IWC Wage Orders;

- Reimburse class members' employee expenses in violation of Lab. Code § 2802;

- Pay timely wages in violation of Lab. Code § 204;

- Pay termination wages in violation of Lab. Code §§ 201–203;

- Comply with itemized employee wage statement provisions in violation of Lab. Code §§ 226(a)[3] and IWC Wage Orders; and

- Comply with Unfair Competition Law in violation of Cal. Bus. & Prof. Code §§ 17200–17208.

(Doc. 1 at 29–35.) The matter was removed to federal court, and the Court denied Plaintiff's motion to remand. (Doc. 17.)

---

[2] In the heading of the First Cause of Action, Plaintiff indicates the claim is brought pursuant to Section 1199. (Doc. 1 at 29.) The allegations of the claim, however, discuss Section 1197. (*See id.*) Section 1199 provides the punishment for violations of the Labor Code: "Every employer . . . is guilty of a misdemeanor . . . who does any of the following [Labor Code violations] . . ." *See* Cal. Lab. Code § 1199. Section 1197 specifies that "payment of a lower wage than the minimum wage is unlawful." *See id.* at § 1197. Despite the heading, it appears that Plaintiff seeks to state a claim for violation of Section 1197.

[3] In the heading of the Seventh Cause of Action, Plaintiff indicates the claim is brought pursuant to Section 226(b). (Doc. 1 at 35.) However, the *allegations* of the complaint focus upon Section 226(a). (*See id.*) Section 226(a) governs itemized wage statements while Section 226(b) relates to an employer's obligation to "afford current and former employees the right to inspect or receive a copy of records pertaining to their employment, upon reasonable request to the employer." *See* Cal. Lab. Code §§ 226(a), (b). Thus, it appears Plaintiff seeks to state a claim for violation of Section 226(a).

4

**B.     Similar Actions**[4]

  1.   *Osorio* action

Felipe Osorio filed a wage-and-hour putative class and PAGA representative action against US Foods on December 8, 2020, in Los Angeles Superior Court, Case No. 20STCV46858. (Doc. 5-3 at 4.) Osorio alleged failure to compensate all hours worked, failure to pay minimum wage, overtime, and double time, failure to provide accurate itemized wage statements, and waiting time penalties— all under California Labor Code—and an Unfair Competition Law claim under California Business and Professions Code. (*See generally id.* at 4–18.)

After the parties reached a settlement, the court certified a settlement class that included "current and former California non-exempt, driver employees based out of the Corona facility who completed at least one wellness check in California at any time between April 15, 2020 through June 28, 2021." (Case No. 20STCV46858, "Judgment", filed May 3, 2023.) In addition, the settlement class included non-exempt, non-driver employees based out of the US Foods facilities in Corona, Fontana, La Mirada, Livermore, Hawthorne, Tracy, and Vista facilities who completed at least one COVID-19 temperature check during specified time periods. (*Id.*) The court noted the settlement class did not include subclasses, "cover[ed] the respective time periods during which Defendant's California locations conducted COVID-19 related temperature checks, which [were] the subject of the Parties' dispute." (*Id.*) The court granted final approval of the settlement terms and entered judgment on May 3, 2023. (*Id.*)

---

[4] Defendant requests the Court takes judicial notice of the Complaints in *Osorio* and *Hawkins*. (Doc. 5-3.) A court may take judicial notice of "a fact that is not subject to reasonable dispute" because it is generally known or "can be accurately and readily determined" from indisputably reliable sources. Fed. R. Evid. 201. "[C]ourts may take judicial notice of documents filed in other court proceedings" or on its docket. *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 984-85 (E.D. Cal. 2012); *see also Schulze v. FBI*, 2010 WL 2902518, at *1 (E.D. Cal. July 22, 2010) (quoting *U.S. v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007)) ("A federal court may 'take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'"). However, facts contained within those filings that are subject to reasonable dispute do not qualify for judicial notice. Fed. R. Evid. 201; *U.S. v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011). Accordingly, the Court **GRANTS** Defendants' request for judicial notice of the existence of the state class action complaints but does not take as true the facts stated therein. The Court also takes judicial notice of the *Osorio* judgment filed on May 3, 2023, and the *Hawkins* "Joint Stipulation re Request for Dismissal without Prejudice and Order" dated January 29, 2014; "Joint Stipulation and Order to Permit Filing of First Amended Complaint" dated January 29, 2014; and the filing of the First Amended Complaint occurring on February 16, 2014. *See NuCal Foods, Inc.*, 887 F. Supp. 2d at 984-85; *see also Hott v. City of San Jose*, 92 F. Supp. 2d 996, 998 (N.D. Cal. 2000) (taking judicial notice of state court filings).

2. *Hawkins* action

Carrell Hawkins filed his putative wage and hour class action on April 26, 2021, in Orange County Superior Court, Case No. 30-2021-01197275-CU-OE-CXC. (Doc. 5-3 at 20.) Hawkins alleged claims against US Foods, Catalyst Forward Group, and ShiftableHR for wage, meal, and rest period violations; failure to maintain required records; unfair business practices; and failure to provide accurate wage statements. (*Id.* at 20–35.) Pursuant to the stipulation of the parties, the court dismissed ShiftableHR from the action without prejudice. (Register of Action ["ROA"] No. 85.) Hawkins and the defendants reported they engaged in settlement discussions, after which "a settlement in principal was reached among Plaintiff, catalyst, and US Foods, with continued settlement negotiations facilitated by the mediator." (ROA No. 88.) As part of the settlement, and in anticipation of seeking approval of the terms, Hawkins filed a First Amended Complaint on February 16, 2024. (*See* ROA Nos. 88, 94.)

## II.  LEGAL STANDARD

### A.  Motion to Dismiss under Federal Rule 12(b)(6)

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993). The Supreme Court explained: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent pleading deficiencies can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

**B.**   ***Colorado River* Doctrine**

The Ninth Circuit clearly articulated how to apply the *Colorado River* Doctrine in *United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1206 (9th Cir. 2021), as follows:

> Pursuant to *Colorado River*, in rare cases, "there are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts." *Colo. River*, 424 U.S. at 817. In the interest of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," a district court can dismiss or stay[ ] "a federal suit due to the presence of a concurrent state proceeding." *Id.* at 817–18. Because of "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given [to] them," *id.* at 817, "[o]nly the clearest of justifications will warrant [a] dismissal" or stay, *id.* at 819. The instances in which a court can stay an action pursuant to *Colorado River* "are considerably more limited than the circumstances appropriate for abstention. The former circumstances, though exceptional, do nevertheless exist." *Id.* at 818. The court's "task in [such] cases ... is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983). "If there is any substantial doubt as to" whether "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties ... it would be a serious abuse of discretion to grant the stay or dismissal at all." *Id.* at 28.
>
> Building on Supreme Court precedent, we have listed eight factors to be considered in determining whether a *Colorado River* stay is appropriate:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court. *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978-79 (9th Cir. 2011) (citation omitted). The factors are not a "mechanical checklist." *Moses H. Cone*, 460 U.S. at 16. We apply the factors "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Id*. at 21. "The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Id*. at 16. "Some factors may not apply in some cases," *Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1166 (9th Cir. 2017), *as amended on denial of reh'g and reh'g en banc* (Oct. 18, 2017), and, in some cases, a single factor may decide whether a stay is permissible, *see, e.g., Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993); *Moses H. Cone*, 460 U.S. at 19 ("[T]he consideration that was paramount in *Colorado River* itself [was] the danger of piecemeal litigation.").

*State Water*, 988 F.3d at 1202–03 (emphases in original) (internal footnote omitted).

**C.    *Landis* Stay**

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). A trial court may "find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Levya v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). In deciding whether to grant a stay, a court weighs several factors: the potential for damage that may result from granting a stay, the hardship a party may suffer in being required to litigate the case, and whether, because of the stay, justice is furthered through simplifying or complicating the issues, proof, and questions of law. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

### III.    DISCUSSION

**A.    Failure to Timely Pay Wages**

In Plaintiff's fifth cause of action, he notes that "Labor Code § requires that all wages are due and payable twice in each calendar month." (Doc. 1 at 32, ¶ 52.) Plaintiff contends he was

8

not timely paid all wages due and payable because "he was not paid all lawful wages owed or provided with lawful meal period[s] or rest period[s]." (*Id.*)  Thus, Plaintiff contends he and class members are entitled to penalties under Labor Code § 210.  (*Id.*, ¶ 53.)  Plaintiff does not provide, however, sufficient factual allegations to support this legal theory, as there are no allegations that he was not paid every two weeks as required by Section 204.  *See Iqbal*, 556 U.S. at 678; *see also Dutra v. J.R. Simplot Co.*, 2023 WL 113846, at *5 (E.D. Cal. Jan. 5, 2023) ("Section 204 requires the payment of wages in a timely manner; it does not provide a right to wages") (citing *Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1136 (N.D. Cal. Aug. 12, 2011), *aff'd* 546 Fed. App'x 612 (9th Cir. Sept. 5, 2013).

Moreover, a violation of Section 204 "does not grant employees a private right of action against employers who violate section 204." *Young v. ABM Sec. Servs.*, 905 F.2d 1541, at *3 (9th Cir.1990); *see also Slay v. CVS Caremark Corp.*, 2015 WL 2081642, at *8 (E.D. Cal. May 4, 2015) ("Section 204 does not provide a private right of action"); *Thistlewaite v. United Parcel Service*, 2022 WL 17578868, at *5 (N.D. Cal. Dec. 7, 2022) ("courts regularly hold that there is no private right of action under § 204").  Because Plaintiff does not have an individual, private right of action for a violation of Section 204, the motion to dismiss the claim is granted, without leave to amend.

**B.**     ***Colorado River* Doctrine and *Landis* Stay**

The Court next evaluates whether the remainder of the case may be dismissed or stayed pursuant to the *Colorado River* balancing test.  As noted earlier, final judgment was entered in the *Osorio* case and settlement is in progress in the *Hawkins* case.  Given that the motion to dismiss is unopposed and the issue of res judicata was not briefed[5], the Court declines the reach the issue of whether *Colorado River* applies.  Instead, pursuant to its inherent authority to control its docket, *Landis*, 299 U.S. at 254, the Court orders the parties to file a joint statement addressing the res judicata effect of *Osorio* and *Hawkins*, and whether the remainder of the motion to dismiss should be resolved or held in abeyance.

---

[5] The Court notes that the failure to brief the issue of res judicata is through no fault of the parties, as the related state case settled after the instant motion was filed.

## CONCLUSION

For the reasons set forth above, the Court **ORDERS**:

1. Defendant's motion to dismiss the fifth cause of action for a violation of California Labor Code § 204 is **GRANTED**, without leave to amend.

2. The question of whether *Colorado River* applies is **HELD IN ABEYANCE**.

3. Within 14 days of this order, the partis **SHALL** file a joint status report addressing (i) the res judicata effect of the developments in the related state cases; (ii) whether the Court should proceed to resolve the pending motion and/or continue to hold it in abeyance; and (iii) whether alternative motions practice will be required.

IT IS SO ORDERED.

Dated: **March 8, 2024**

*/s/ Jennifer L. Thurston*
UNITED STATES DISTRICT JUDGE